UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PETER VRINCEANU,

               Plaintiff,

   v.

KING COUNTY, et al.,

               Defendants.

Case No. C23-423RSM

ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

## I.    INTRODUCTION

This matter comes before the Court on Defendants' Motion to Dismiss. Dkt. #21. Plaintiff Peter Vrinceanu opposes. Dkt. #22. No party has requested oral argument. For the reasons stated below, the Court GRANTS the Motion without leave to amend.

## II.    BACKGROUND

The Court will accept all facts stated in the Amended Complaint, Dkt. #6, as true for purposes of this Motion.

Mr. Vrinceanu filed an earlier action in state court, which was removed to this Court. *See* Case No. 2:23-cv-00539-RAJ. In that case, Mr. Vrinceanu discusses many of the same facts as here but with fewer claims. There he is represented by counsel, here he proceeds *pro*

ORDER GRANTING MOTION TO DISMISS - 1

*se*.  Both cases discuss Mr. Vrinceanu's 2022 termination as an employee of King County Metro due to his refusal to receive a COVID-19 vaccine.

In the other case, the Complaint is eight pages long and includes two causes of action: "Violation of Title VII 42 USC §2000e Against Defendants for Failure to Accommodate" and "Violation of State Law Prohibiting Religious Discrimination RCW 49.60.180 et. seq." Case No. 2:23-cv-00539-RAJ, Dkt. #1-1.

Here the Amended Complaint is 142 pages long.  It includes twelve causes of action: "Religious Discrimination – Title VII;" "Hostile Work Environment based on Religion – Title VII;" "Retaliation – Title VII;" "Violation of Religious Liberty Under the First, Fifth and Fourteenth Amendments Pursuant to 42 USC §1983 - U.S. Constitution (Free Exercise);" "Unlawful Employment practices under Title VII § 703(a)(2) – Unlawful Employment Practices) SEC. 2000e-2. [Section 703] and Discrimination based on race – Title VII;" "Deprivation of Life, Liberty, or Property, U.S. Const. am. V., am. XIV, Wash. Const. art. I, Sec. 3;" "Wage theft;" "Breach of Contract; U.S. Const. art I, § 10, cl. 1; Wash. Const. art. I, § 23;" "Violation of State Law Prohibiting Religious Discrimination RCW 49.60.180 et. Seq;" "Violation of the Washington Law Against Discrimination; Disparate Impact;" "Violation of Right to be Free from Arbitrary and Capricious Action;" and "Public Policy Tort Claim Against Religious Discrimination."

The Amended Complaint starts with "Preliminary Statements" not found in the other lawsuit, where Mr. Vrinceanu was assisted by counsel.  These statements include that "[t]he pandemic was used as a pretext to fire all Metro Transit employees who, due to their sincerely held religious beliefs, refused to endorse, unlike King County, abortions that disproportionately end the lives of black and brown babies." Dkt. #6 at 2.  The preliminary statements continue for

ORDER GRANTING MOTION TO DISMISS - 2

over 15 pages and include facts and opinions that stray from the typical narrative the Court would expect in an employment discrimination case. Other examples include:

- "Considering present political environment in King County, the current King County Metro Transit leadership would have fired Reverend Dr. Martin Luther King Jr. if he would've been an employee of the only county in America named after himself and he would've sought an accommodation based on his sincerely held religious beliefs. None of Reverend's Dr. Martin Luther King Jr. descendants could've driven, maintained, or repaired a bus at King County Metro Transit if they chose to exercise their civil rights, such as freedom of religion." *Id*. at 8.

- "There is a long list of Democrats leaders that balked at a corona virus vaccine under President Trump but changed their tune under President Biden, including Vice President Kamala Harris, Cal Cunningham, Andrew Cuomo, Nancy Pelosi, and President Biden himself." *Id*. at 8–9.

- "Can King County regulate or prohibit the consumption of unhealthy foods, alcohol, coffee, all known products to potentially be detrimental to the health of its workforce?" *Id*. at 11.

- "Can the Plaintiff be denied access to a workshop solely because he is white, while the two vendors, paid from taxpayers' dollars to provide this training, are also white? Can the Plaintiff be stereotyped, judged, and held responsible, without being asked, consulted, nor interviewed, for what his employer believes to be Plaintiff's ideals of attractiveness and health?" *Id*. at 12.

- "Executive Constantine proclaimed December 12, 2022, to be 'Terry White Day' (Exhibit 13) as a 'thank you' and 'go-way' retirement present. Executive

ORDER GRANTING MOTION TO DISMISS - 3

Constantine specifically commends defendant White's '35 years of exemplary service', as General Manager, saying 'he pushed the agency to lead the world in safety, equity, and sustainability'…. In realty, it is demonstrably true that Defendant Terry White had been a General Manager for just over 2 years; compare it with his predecessors Rob Gannon (4 years) and Kevin Desmond (12 years) who take credit for hybrid and electric busses, a significant achievement. In contrast, no such significant business achievements distinguish Mr. White's 2 years of service as General Manager." *Id*. at 14.

- "No King County Metro employee had been approved to telecommute as a reasonable accommodation, while King County managers and HR representatives involved in the denial process had done so while telecommuting." *Id*. at 15.

Whereas the other Complaint only lists King County and King County Metro as named Defendants, the instant Amended Complaint includes six individuals, ranging from the General Manager of King County Metro to someone with the title "Human Resource Manger II." *See id*. at 18.

Plaintiff Vrinceanu is a Romanian Orthodox Christian white man who immigrated to the United States of America from Romania in 1994, at age 25. He started working for King County Metro Transit in June 2002. He has never been disciplined at work prior to this vaccination incident.

He started off as a sheet metal worker in a Metro body shop. He was promoted to a management position. Up until his firing he worked a "paint/sign shop and machine/weld shop chief" without a formal job description. At the time King County Metro terminated his employment on February 2, 2022, he was not represented by any organized labor union. He

ORDER GRANTING MOTION TO DISMISS - 4

opted out of the union on October 26, 2021, after he learned that there would be no accommodations for employees refusing to get vaccinated.

On August 23, 2021, Mr. Vrinceanu emailed King County Metro a "Mandatory Covid-19 Vaccination Religious Exemption/Accommodation Request Form," stating that, because of his religious beliefs, he could not receive a vaccine connected in any way to abortions. His understanding that the available Covid-19 vaccines were connected in some way to abortions was based on his own research. He does not consider himself opposed to all vaccines.

On September 11, 2021, Mr. Vrinceanu tested positive for Covid-19.

Mr. Vrinceanu believed King County would engage in an interactive process with an individualized assessment of a reasonable accommodation for his refusal to be vaccinated. Instead, he received a "rubber stamped" answer to all employees with religious accommodation requests. On November 12, 2021, he met via Zoom with Defendant Asare, Senior HR Business Partner, and proposed several possible accommodations, including: wearing appropriate PPE, social distancing, daily temperature check, and weekly testing. Mr. Vrinceanu offered to telecommute, full time or part time, as he spent most of his time online answering emails, verifying orders, approving time off and timecards, and performing other managerial duties.

On December 28, 2021, Mr. Vrinceanu received an email from HR saying that a reasonable accommodation was not available "that would sufficiently mitigate or eliminate the risk associated with an unvaccinated employee performing the essential functions of your position." *Id*. at 43.

On December 30, 2021, Mr. Vrinceanu requested a Loudermill Hearing. The hearing was scheduled for January 12, 2022. Many more emails were sent between the parties. Mr. Vrinceanu was terminated on February 2, 2022. The Amended Complaint contains scores of pages with additional facts not relevant for ruling on the instant Motion.

ORDER GRANTING MOTION TO DISMISS - 5

## III. DISCUSSION

### A. Legal Standard

Rule 8(a) states that a pleading that states a claim for relief must contain "a short and plain statement of the grounds for the court's jurisdiction," "a short and plain statement of the claim showing that the pleader is entitled to relief," as well as "a demand for the relief sought..." Fed. R. Civ. P. 8(a). The purpose of the short and plain statement rule is to provide defendants with "fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citation and internal quotation marks omitted). Although normally "verbosity or length is not by itself a basis for dismissing a complaint," *Hearns v. San Bernardino Police Dep't*, 530 F.3d 1124, 1131 (9th Cir. 2008), the Ninth Circuit has stated in several cases that excessive length combined with opaque or confusing language is enough to permit dismissal under this rule. *See Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1058-59 (9th Cir. 2011) (citing, *inter alia*, *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 415 (9th Cir. 1985)).

In making a 12(b)(6) assessment, the court accepts all facts alleged in the complaint as true, and makes all inferences in the light most favorable to the non-moving party. *Baker v. Riverside County Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009) (internal citations omitted). However, the court is not required to accept as true a "legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555 (2007)). The complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. at 678. This requirement is met when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The complaint need not include detailed allegations, but it must have "more than labels and conclusions, and a formulaic recitation of the elements

of a cause of action will not do." *Twombly*, 550 U.S. at 555. Absent facial plausibility, a plaintiff's claims must be dismissed. *Id*. at 570.

Where a complaint is dismissed for failure to state a claim, "leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

**B. Analysis**

    **1. Meet and Confer Requirement**

Mr. Vrinceanu contends that the Court should deny this Motion because Defendants failed to meet and confer prior to filing. Defendants are correct that there is no such requirement for a motion to dismiss in the Federal Rules of Civil Procedure or the Court's Local Rules, and the undersigned judge has not instituted a standing order with such a requirement. Mr. Vrinceanu appears to have quoted a standing order from a different judge and cited a case from outside this district. *See* Dkt. #22 at 3. This is not a basis to deny the requested relief.

    **2. Duplicative Claims**

Defendants first argue that Counts 1-4 and 6-12 should be dismissed as duplicative of claims in Case No. 2:23-cv-00539-RAJ. Dkt. #21 at 5.

The Court has discretion to dismiss later-filed duplicative actions in order to promote judicial economy and to protect Defendants from vexatious litigation, and will do so here.

Certain causes of action in this case, namely "Religious Discrimination – Title VII;" "Hostile Work Environment based on Religion – Title VII;" "Retaliation – Title VII;" and "Violation of State Law Prohibiting Religious Discrimination RCW 49.60.180 et. Seq" are clearly duplicative of the claims in Case No. 2:23-cv-00539-RAJ. The remainder of the claims, other than Claim 5, ultimately share the same nucleus of facts and the same parties as that other

case and should be dismissed as well given the arguments cited by Defendants. *See* Dkt. #21 at 6–9. Claim 5 is a separate race-based Title VII claim discussed below.

Mr. Vrinceanu appears to concede that his cases share the same nucleus of facts but argues that his claims should not be dismissed against the individual Defendants, as his other case only names King County and King County Metro Transit Department (as well as John and Jane Does 1-10). Dkt. #22 at 9. Mr. Vrinceanu offers that perhaps his cases should be consolidated. The Court finds that the proper procedural action is for Mr. Vrinceanu to join these individual Defendants in the other action rather than to proceed with two simultaneous lawsuits discussing the same events, the same injury, and bringing the same causes of action. Because the Court is dismissing this entire case, consolidation is not warranted.

### 3. Racial Discrimination Claim

Defendants next move for dismissal of Mr. Vrinceanu's racial discrimination cause of action for failure to state a claim. Dkt. #21 at 11. As Defendants and the Court understand it, this is the only cause of action not related to Mr. Vrinceanu's separation for failure to show proof of vaccination against Covid-19.

Mr. Vrinceanu alleges he received an email dated December 22, 2021, describing upcoming wellness workshops. Dkt. #6 at 91–92. A certain workshop was to be offered in two sessions, one open to all and one described as being "open to BIPOC only." *Id*. at 92. This workshop was to be offered in what would be Mr. Vrinceanu's last month of employment. Mr. Vrinceanu alleges he suffered an adverse employment action by being denied access to the second session of the workshop and that such created a hostile work environment for non-BIPOC employees. *Id*. at 124.

Defendants first assert that Mr. Vrinceanu lacks standing to bring this claim because he fails to allege that he attempted to register for the workshop or even that he was employed by

King County at the time the workshop took place. They argue that, based on the Amended Complaint and its attachments, the workshop took place after Mr. Vrinceanu was terminated. *See* Dkt. #21 at 11. Defendants also contend that this workshop constitutes a "trivial" employment action that does not rise to an actionable event. *Id*. at 12 (citing *Knight v. Brown*, 797 F. Supp. 2d 1107, 1125 (W.D. Wash. 2011), *aff'd*, 485 F. App'x 183 (9th Cir. 2012) ("The Ninth Circuit has recognized that only 'nontrivial' employment actions, such as 'termination, dissemination of a negative employment reference, issuance of an undeserved negative performance review and refusal to consider for promotion' qualify as adverse employment actions."). Defendants also cite to *Kayky v. The Boeing Co.*, No. C15-0488RSL, 2016 WL 6525808, at *5 (W.D. Wash. Nov. 3, 2016) ("Similarly, the fact that plaintiff was denied the opportunity to take a particular training course . . . had no tangible employment consequence."); *Schaffer v. GTE, Inc.*, 40 F. App'x 552, 555 (9th Cir. 2002) ("Schaffer's complaints about her cubicle, lack of Internet access, lack of access to a company vehicle, and denial of training fail because the conduct complained of does not constitute adverse employment action.").

In response, Mr. Vrinceanu says, "Defendants clearly are not denying the racial segregation imposed on King County employees, they rather continue to justify it." Dkt. #22 at 11. He also says, "[s]imply because Plaintiff didn't talk about previous experiences as they relate to race discrimination it doesn't mean they didn't happen." *Id*. He does not refute that he did not sign up for this specific wellness seminar open to BIPOC employees only, instead he says "the few white employees who registered were promptly kicked out of the workshop." Dkt. #22 at 13. He does not address any of the cases cited by Defendants. He compares his situation to the civil rights struggle of Rosa Parks and his case to *Brown v. Board of Education*.

On Reply, Defendants reiterate that, "Title VII does not create a cause of action for any workplace slight with a racial dimension." Dkt. #23 at 3. They point out that the Court can

only examine the sufficiency of Mr. Vrinceanu's actual allegations, not the substance of events that he did not allege. *Id*. They again maintain that Mr. Vrinceanu lacks standing: "[e]ven if the alleged workshop incident were sufficient to state a claim under Title VII, Mr. Vrinceanu lacks standing to bring such a claim. Mr. Vrinceanu does not dispute that he was not employed by King County at the time the alleged 'BIPOC-only' workshop took place." *Id*.

The Court ultimately agrees with Defendants. While a racially-segregated work event is troubling, and could potentially lead to legal action if combined with more allegations of racial discrimination, Mr. Vrinceanu fails to allege that he attended this event, which could not have occurred earlier than the last month of his employment, after he was already facing termination for a completely unrelated reason. He does not allege that he suffered any other race-based discrimination or that he could so allege by pointing to any specifics. Mr. Vrinceanu cannot bring this claim on behalf of others, as he repeatedly attempts to do. He lacks standing and offers no basis for the Court to conclude that he could have such if he were granted leave to amend. Even if he had attempted to attend this segregated wellness workshop prior to his termination on other grounds, he has failed to plead sufficient facts to show an adverse employment action given the cases cited by Defendants. Given all of the above, this claim will be dismissed without leave to amend.

### 4. Rule 8(a) Issues

Defendants argue that the whole Amended Complaint generally is "too long and too vague." Dkt. #21 at 13. While the Court does not typically grant motions to dismiss for length, this is the rare case where the Court agrees that Rule 8(a) has been violated. It is not reasonable for Defendants to respond to every tangential allegation contained the pleading, as demonstrated by some of the examples included above. Defendants also point out that "no individual

defendant is mentioned in any of the twelve causes of action." *Id.* This will be something that Mr. Vrinceanu needs to work on if he adds the individual Defendants to his other case.

**5. Dismissal of Individual Defendants based on Qualified Immunity**

The Court declines to address this issue at this time given that the case is being dismissed for the above deficiencies.

### IV.  CONCLUSION

Having reviewed the relevant pleading and the remainder of the record, the Court hereby finds and ORDERS that Defendants' Motion to Dismiss, Dkt. #21, is GRANTED. Plaintiff's claims are DISMISSED without leave to amend. This case is CLOSED.

DATED this 24th day of July, 2023.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE